## MYTON VS. DUFF.

The rules that an apparent alteration invalidates negotiable paper does not apply with equal strictness to sealed instruments.

Error to the Common Pleas of Huntingdon County. No. 194 January Term, 1884.

This was an action in debt brought by Mordecai Duff against Andrew Myton, executor of Jacob Smith, deceased, and was founded on a paper of which the following is a copy:

March 7, 1870.

$450.00.

I promise to pay to Mordecai Duff or order the Sum of foure fifty <sup>hundred and</sup> fifty dolllars on demand with eight per cent. interest from this date until paid without defalcation.

Value received—x—

SEAL.

    Jacob Smith.                  Jacob Smith.

It appears that Jacob Smith had been the owner of a farm in Huntingdon County, Penna,, some years before his death, which he sold to one of his sons, taking a mortgage for $4,000, the interest of which was payable to him during his life, and the principal at his death to his heirs. Mordecai Duff was married to the daughter of Jacob Smith, who lived with his daughter and son-in-law some time in the fall of '71. He also visited other sons in the west. After his death suit was brought on this note, and it was offered in evidence, and also evidence of a man in the west, who had heard Jacob Smith say that he had borrowed $450 of Duff, which he wanted for his son, Samuel, in Minnesota, and that he had built his son, Samuel, a brick house and had bought him 40 acres of land, costing from $800 to $1,000. On behalf of the executor of

Jacob Smith, it was claimed that there had been a material alteration in the note which avoided it. Of the two signatures, the one at the right hand corner was in German, and the other in English. The charge of the Court was, *inter alia,* as follows:

It is alleged on the part of the plaintiff and admitted on the part of the defendant that that is the signature of Jacob Smith, but the defense set up here by the defendant is that the note has been altered in such a material way that it violates the note and makes it utterly null and void. Now, there is no dispute as to what the law is on a question of that kind, where there is a material alteration made after the execution of the paper; the law is that it vitiates the paper and makes it utterly null and void. Then we say to you, gentlemen of the jury, that if this note was written as it alleged here by the plaintiff, which is as follows: "I promise to pay to Mordecai Duff, or order, the sum of Four Hundred and Fifty dollars, on demand, with eight per cent. interest, until paid, without defalcation, value received;" if it was written in that way and any erasure and interlineations made in the body of it before it was signed, then the plaintiff can recover the amount of this note, with interest from its date. But if these alterations and interlineations were made afterwards, unless they were assented to by Jacob Smith, then it would affect the note; and if there was no seal put to the note when it was executed; if the seal was put there afterwards, it, too, would affect the note, make it null and void and the plaintiff could not recover.

It is claimed that on the face of the note there is an apparent alteration and that it must be accounted for. It strikes us, gentlemen of the jury, that if you look at the whole note and read it just as it is written without any erasure or interlineation, that it would mean $450.00; it would either mean that or nothing. It would seem it was first written, beginning with "four fifty and fifty dollars," and after he found out his mistake, and went over it again and erased the word fifty and wrote "hundred and" over it, so as to make it then read $450.00. It is not 450 cents because the cents are not named at all. It does not strike the Court that from the face of the

note, that although there is an apparent alteration, that it is such a material alteration as to affect the validity of the note, as it seems from the face of the note that it was a correction of a mistake made at the time of writing the note; but we say to you if you find that the alteration was made subsequent to its execution, and you find it from the evidence in the case, then, of course, the plaintiff cannot recover and your verdict must be for the defendant.

The "seal," it is also alleged, was put there after the note was executed. It is claimed that it was put there after, because of its unusual position, and because of its unusual shape, and because of there being no blending of the ink between the letter "J" in Jacob Smith's name and the small scroll of the seal. Now, we cannot say to you, gentlemen of the jury, that it is not in its usual shape; that is a question of fact for you to determine. There is no uniform shape for seals; because we see small seals and large seals, and they have probably as many shapes as there are persons to make seals. No two persons would make the circle enclosing the word "seal" exactly alike; there would always be some difference. There may be some form for seals, but we know of no usual uniform shape for seals; therefore we cannot say to you that this is an unusual shape for it, and that it puts the burden of proof upon an unusual shape. The word "seal" is admitted to be in the handwriting of the person who wrote the body of the note, as we recollect the testimony of the experts, they thought it was likely written at the same time the body of the note was written, but that is for you to determine from the evidence in the case. If you should find from all of the evidence in the case that the seal was not on the note when Jacob Smith signed it, but that it was put there afterwards, without his consent, then it is such a material alteration of the note as to vitiate it, and the plaintiff cannot recover. Or, in other words, if the defense set up here by the defendant is true, and you so find from the evidence, then the plaintiff cannot recover, because he must satisfy you that from the evidence that this is the note of Jacob Smith, and that it is now in the same condition as it was when he executed it;

if he fails in any one of these particulars, then he cannot recover.

---

On the 12th Dec., 1883, the jury rendered a verdict for the / plaintiff for $819.37. Myton then took a writ of error, complaining of the admission of evidence, and also in not instrucing the jury that there was a material alteration in the note, but in leaving that the question to the jury.

*Myton, Shock and R. B. Petriken, Esqs.*, for plaintiff, cited as to the effect of the alterations: Clark vs. Eckstein, 22 Pa., 507 ; Paine vs. Edsell, 19 Penna., 180 ; Churchman vs. Smith, 6 Wh., 146 ; Hill vs. Cooley, 46 Pa., 259 ; Miller vs. Reed, 27 Pa., 244. The Court did not answer the first and most important part of the third point submitted by defendant's counsel. In answering that point the Court referred only to the shape of the seal, and concluded to say nothing about the unusual location of it, for, although there may not be any usual shape for the seal, there is a usual place for it, fixed by common consent and usage ; Greenleaf on Evidence, section 564, note 1 · Smith's Leading Cases, Vol. 1, part 2, pages 1,275 1,276, 1,277 and 1,251.

*Messrs. Speer & McMurtrie, Esqs.*, contra. The strict rules, as to alterations in negotiable paper, do not apply to instruments under seal ; Simpson vs. Stackhouse, 9 Penna., 186 ; Robinson vs. Myers, 67 Penna., 9. The instrument is to be submitted to the jury and they are to determine whether the alteration was made before ,or after execution ; Maybee vs. Sniffen, 2 E. D. Smith, 1 ; Beaman vs. Russel, 20 Vt. 205 ; Mathews vs. Coalter, 9 Mo., 705.

The Supreme Court affirmed the judgment of the Court of Common Pleas on the 9th of June, 1884, in the following opinion,

PER CURIAM :

The rule which applies to an apparant alteration of commercial paper, does not apply with equal strictness to an instrument under seal. In view of the fact that this note was under seal, the case was properly submitted to the jury and on evidence.

Judgment affirmed.